way, and was an amendment which might have been allowed at the trial, if the proof justified it.

The second order appealed from must therefore be modified, by striking out all terms imposed upon plaintiff, and also the preclusion clause, and, as modified, is affirmed, with $10 costs and disbursements to appellant. All concur.

---

CASEY v. DAVIS &. FURBER MACH. CO.

(Supreme Court, Appellate Division, Fourth Department. March 6, 1912.)

1. COURTS (§ 91*)—PREVIOUS DECISION AS THE LAW OF THE CASE.

Where on a former appeal of an action for injuries causing the death of a person employed in a mill, and received by being struck by an iron ball falling from a feed machine which a workman employed by the defendant was attaching to a carding machine sold the plaintiff's employer by the defendant, the court found that the relation of master and servant did not exist between the defendant and such workman as to the work he was doing at that time, the direction of a nonsuit at the close of practically the same testimony in a later action was proper.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 313, 325, 326; Dec. Dig. § 91.*]

2. MASTER AND SERVANT (§ 330*)—NEGLIGENCE OF SERVANT—SCOPE OF EMPLOYMENT—EVIDENCE—RES IPSA LOQUITUR.

In an action for injuries from the negligent dropping of an iron ball, it is not sufficient to authorize a recovery that the defendant had its employé at work in the building in which the injury occurred, and that he was the cause of the injury under the doctrine res ipsa loquitur, but it must be shown that he in the very act of handling the iron ball was engaged in the defendant's work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1270–1272; Dec. Dig. § 330;* Negligence, Cent. Dig. § 240.]

3. MASTER AND SERVANT (§ 301*)—TORTS OF SERVANT—LIABILITY OF MASTER—RESPONDEAT SUPERIOR.

Where a workman of a machinery company was sent to install a carding machine in a mill, his installation in connection with the machine of a feed machine not manufactured or furnished by the employer at the instance of the milling company which paid his traveling expenses and his expenses while at work was work of the milling company which it had a right to control, and for negligence in its conduct resulting in injury to an employé of the milling company the machinery company would not be liable under the doctrine of respondeat superior.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1210–1216; Dec. Dig. § 301.*]

McLennan, P. J., and Spring, J., dissenting.

Appeal from Trial Term, Onondaga County.

Action by John J. Casey, administrator, against the Davis & Furber Machine Company. From a judgment for defendant, plaintiff appeals. Affirmed.

See, also, 140 App. Div. 941, 126 N. Y. Supp. 1124.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

Hancock & Spriggs, for appellant.
King, Waters & Page, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

FOOTE, J.   Plaintiff's intestate, Anna L. Casey, began an action in her lifetime for the same cause of action as here against this defendant.   The cause was tried and a verdict rendered in her favor and judgment thereon entered on March 20, 1909.   Defendant appealed to this court on April 15, 1909.   Miss Casey died on April 14, 1909.   On the 7th of September, 1909, her father, the plaintiff, was appointed administrator of her estate, and was later substituted in her place as plaintiff and respondent.   On the 4th of May, 1910, said appeal was determined in this court and the judgment reversed and a new trial granted.   See 138 App. Div. 396, 122 N. Y. Supp. 804. Plaintiff thereafter, and on July 9, 1910, appealed to the Court of Appeals, and thereafter, and on December 16, 1910, said appeal was withdrawn by consent of the Court of Appeals on motion of plaintiff.   No new trial of said action has been had, but on February 23, 1911, plaintiff began this action for the same cause, which came to trial on May 23, 1911, and resulted in a nonsuit at the close of plaintiff's case.

Defendant is a Massachusetts corporation engaged in the business of manufacturing carding machines and other machinery for woolen mills.   The Crown Mills is a corporation owning and operating a woolen mill at Marcellus, in the county of Onondaga.   Plaintiff's intestate was an employé in the Crown Mills.   She was injured on January 17, 1907, at the mill where she worked by an iron ball which fell from a machine on the floor above, and rolled through a hole in the floor made for and through which a belt was running.   The ball struck a large revolving pulley underneath this hole, and was thrown or deflected so as to strike Miss Casey's head as she was working at a machine on the floor below some distance away from the pulley. It is conceded that the injury she received subsequently caused her death.

On the 28th of June, 1906, the Crown Mills made a contract with defendant, by which defendant was to manufacture for it for use in its mill at Marcellus a carding machine.   It seems to have been the understanding, although the written contract did not so provide, that defendant was to send a man to the Crown Mills to set up and adjust this carding machine ready for use.   The machine was made and shipped to the Crown Mills, the parts not being put together, and on or about January 3, 1907, one Arthur Clow, an employé of defendant, was sent by defendant to Marcellus to set up this carding machine at the Crown Mills.   His wages were paid by defendant, but his expenses to and from Marcellus were paid by the Crown Mills, together with his expenses at Marcellus.   On the 17th of January, 1907, he had practically completed setting up the carding machine, and had also bolted to the carding machine another machine to be used in connection with it which belonged to the Crown Mills, and which had not been purchased of or furnished by defendant.   It was called an automatic feed machine, and was used to feed the wool into the carding machine.   The iron ball which injured plaintiff's intestate was a part of this feed machine.   As Clow had completed bolting the feed machine to the carding machine, he noticed that the iron ball

was insecurely bolted to the feed machine so that it would not properly perform its function, and he took a wrench to tighten the nut on the bolt which fastened it to the machine, and in some manner, not explained by the evidence and apparently not known to Clow, who was a witness for plaintiff, the ball fell onto the table of the feed machine, rolled off onto the floor, rolled around to the further side of the belt which was running through this hole in the floor, and down into the hole, which was just large enough to permit the ball to pass through. This hole was some 12 to 18 inches away from the machine. It does not appear whether Clow was asked to connect the feed machine to the carding machine by any one in the employ of the Crown Mills, or whether he did it on his own motion. There is evidence from which it might be found that he could not successfully test the carding machine without having the feed machine attached. It does not appear that defendant had undertaken to connect the feed machine with the carding machine.

The question in the case is whether Clow in the act of connecting the feed machine to the carding machine and adjusting the iron ball on the feed machine was acting as the servant of defendant in the business of defendant, or, rather, whether there is evidence sufficient to require the submission of this question to the jury as a question of fact.

[1] As respects this question, it does not differ from that presented upon the appeal in the former action. Four justices of this court concurred in the opinion in that case, where, in reference to this question, it was said:

"I think the relation of master and servant did not exist between the defendant and Clow as regards the work in connection with which it is claimed Clow was careless. The defendant had nothing to do with furnishing or setting up the feed. Under the contract between the defendant and the Crown Mills, the defendant agreed to furnish a carding machine and to send a man to set it up, the defendant to pay his wages and the Crown Mill his expenses. * * * While it was the right and perhaps the duty of the defendant to test the carding machine after it was set up, Clow, who was called as a witness by the plaintiff, finally admitted that the carding machine could be tested without the feed, and that fact is fairly established by the evidence, although it may have been more practicable to use the feed in making the test. But, even if necessary to set up the feed to test the carding machine, I fail to see how the defendant can be made liable for the careless act in question any more than it could if Clow had assisted in doing work in installing the engine or any other part of the machinery necessary to furnish the power or operate the carding machine, but not connected with the setting up of the machine."

It now appears, as it did in that case, that defendant had nothing to do with furnishing or setting up the feed. It does not appear now, as it did in the former case, that Clow set up the feed under an arrangement with the foreman of the Crown Mills for an exchange of work, or that Clow had specific instructions from defendant not to set up feeds, except when sold by defendant, or that Clow set up the feed machine at the request of the Crown Mills. Hence, what was said in the opinion in respect to these matters does not apply here. But that part of the opinion above quoted is applicable, and justified, if it did not require, the disposition of the case which the trial justice has

made, unless we are prepared to reconsider and reverse the ruling then made.

[2] This we are asked to do upon the ground that plaintiff makes a prima facie case by proving the occurrence of the accident and by identifying the person responsible for the accident as the servant of defendant, under the doctrine of res ipsa loquitur, and in support of this the falling-object cases are cited: Wolf v. American Tract Society, 164 N. Y. 30, 58 N. E. 31, 51 L. R. A. 241 (a case of a brick falling upon a workman); Hogan v. Manhattan Ry. Co., 149 N. Y. 23, 43 N. E. 403 (a case of an iron bar falling upon a person driving along the street); the cases of Reilly v. Atlas Iron Construction Co., 83 Hun, 196, 31 N. Y. Supp. 618, and Guldseth v. Carlin, 19 App. Div. 588, 46 N. Y. Supp. 357 (cases of brick falling upon workmen); and Dohn v. Dawson, 90 Hun, 271, 35 N. Y. Supp. 984 (a case of an object falling upon a workman).

If this were an action against the Crown Mills, whose business was being conducted in this building, undoubtedly plaintiff's evidence would have made a prima facie case against that company, but here, I think, the burden was upon plaintiff to show that Clow in the very act of handling this iron ball was engaged in defendant's work. It is not enough that defendant had work in progress in this building and that Clow was its agent in the performance of that work.

[3] If we assume that plaintiff's proofs were sufficient to have made a case in an action against Clow himself or against the Crown Mills, it does not follow that it would make a case against this defendant under the doctrine of respondeat superior. The facts here are not in dispute; nor is it a case where different inferences may be drawn from the conceded facts. Clow was engaged upon a piece of work with which his master, the defendant, had nothing whatever to do. If he was doing it to save his own time in order to sooner be in a position to test the carding machine, still it was work which the Crown Mills was bound to do as between it and defendant, and it was work for the Crown Mills, and the detail of which the Crown Mills had a right to control. Hence there can be no inference that it was defendant's work.

I think the learned trial justice was right in following the former decision of this court, and that the nonsuit was properly granted.

. None of the other grounds of error urged by appellant are sufficient, we think, to require a reversal of the judgment, which should be affirmed with costs. All concur, except McLENNAN, P. J., and SPRING, J., who dissent upon the ground that the questions as to whether Clow was an employé of the defendant at the time of the accident and whether he was negligent were questions of fact for the jury.